UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

GAYMAR INDUSTRIES, INC.,

               Plaintiff,

v.                                               **DECISION AND ORDER**
                                                       06-CV-70S

FIRSTMERIT BANK, N.A.,

               Defendant.

## I. INTRODUCTION

On February 1, 2006, Plaintiff Gaymar Industries, Inc., commenced this diversity action against Defendant FirstMerit Bank, N.A., seeking equitable relief related to an unsuccessful leasing transaction. Presently before this Court is Defendant's Motion to Dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and for improper venue pursuant to Rule 12(b)(3). Alternatively, Defendant seeks an Order transferring this case to the Northern District of Ohio pursuant to 28 U.S.C. § 1404(a).[1] Plaintiff opposes the motion.[2]

For the reasons discussed below, this Court finds that it lacks personal jurisdiction over Defendant. Defendant's motion seeking dismissal on that basis will therefore be granted. However, this Court finds that the interests of justice warrant the transfer of this

---

[1] In support of its motion, Defendant filed a memorandum of law, the Affidavit of Terry E. Patton, the Affidavit of Robert L'Esperance, the Affidavit of Joseph Ritzert, a reply memorandum of law, and a memorandum of law in response to Plaintiff's sur-reply.

[2] In opposition to Defendant's motion, Plaintiff filed a memorandum of law, the Affidavit of Frank L. Lumbar, and a sur-reply.

1

case to the proper district. Therefore, this case will not be dismissed outright, but rather, will be transferred to the United States District Court for the Northern District of Ohio.

## II. BACKGROUND

### A.    Facts

In adjudicating Defendant's motion, this Court assumes the truth of the following factual allegations contained in the Complaint. See Hosp. Bldg. Co. v. Trs. of Rex Hosp., 425 U.S. 738, 740, 96 S.Ct. 1848, 1850, 48 L.Ed.2d 338 (1976); see also Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll., 128 F.3d 59, 63 (2d Cir. 1997).

Plaintiff is a corporation organized and operating under New York law. (Complaint, ¶ 1.) Its principal place of business is in Orchard Park, New York, which is located in the Western District of New York. (Complaint, ¶ 1.) Defendant is a national banking association that maintains its principal office in Akron, Ohio, and it is a corporate citizen of the State of Ohio. (Complaint, ¶ 2.)

At some point prior to December 10, 2003, Defendant lent money and provided line of credit financing to non-party Preferred Capital, Inc. ("PCI"). (Complaint, ¶ 11.) PCI's main office is in Brecksville, Ohio. (Complaint, ¶ 13.) PCI purchased equipment with the money obtained from Defendant, and then leased that equipment to third parties, primarily in the medical and health services field. (Complaint, ¶ 11.) PCI executed Notes in favor of Defendant, and assigned Defendant the various Leases as collateral for the Notes. (Complaint, ¶ 12.)

On December 10, 2003, Defendant entered into an agreement with PCI to increase its available line of credit from $4,000,000 to $5,000,000. (Complaint, ¶ 14.) Thereafter, on or about March 19, 2004, Defendant and other lenders used by PCI entered into a

formal Subordination Agreement wherein they established the relative priority of various liens on Leases and other of PCI's assets.  (Complaint, ¶ 15.)

One of PCI's leasing programs involved certain telecommunication devices manufactured by non-party NorVergence, a New Jersey corporation.  (Complaint, ¶ 16.)  On June 30, 2004, NorVergence's creditors commenced an involuntary bankruptcy proceeding against NorVergence, which was subsequently converted to a Chapter 7 liquidation proceeding in the Newark Division of the United States Bankruptcy Court for the District of New Jersey on July 14, 2004.  (Complaint, ¶ 17.)  The bankruptcy proceedings were allegedly prompted by nationwide litigation concerning whether PCI and NorVergence had engaged in fraudulent activity in connection with certain Lease Agreements.  (Complaint, ¶ 18.)

Plaintiff alleges that Defendant knew or should have known about the allegations against PCI in the Summer of 2004.  (Complaint, ¶ 19.)  At that time, Defendant demanded that PCI buy back a number of Leases that it had assigned to Defendant, despite knowing that PCI did not have enough cash to do so.  (Complaint, ¶¶ 20, 21.)  However, on September 28, 2004, Defendant advanced PCI $1,561,566.77 so that it could buy back the Leases.  (Complaint, ¶ 22.)  This allowed Defendant to extricate itself from issues surrounding the Leases and claims that could have been asserted or may have been asserted against Defendant.  (Complaint, ¶ 22.)

Plaintiff alleges that by September 28, 2004, Defendant knew or should have known that PCI faced tremendous financial pressure or was insolvent.  (Complaint, ¶ 23.)  Nevertheless, Defendant continued to conduct business with PCI.  (Complaint, ¶ 24.)

On November 25, 2004, PCI entered into four Leases with non-party Unlimited

3

Advacare, Inc. of New Jersey for equipment manufactured by Plaintiff. (Complaint, ¶ 25.) Plaintiff delivered the equipment, which is still being utilized by Advacare. (Complaint, ¶ 26.) PCI received money from Defendant for the purchase of the equipment from Plaintiff and then assigned the Leases to Defendant. (Complaint, ¶ 27.) PCI, however, never paid Plaintiff for the equipment. (Complaint, ¶ 28.) Plaintiff therefore contacted Defendant to collect payment through the Lease payments being made by Advacare to Defendant. (Complaint, ¶ 29.) However, Defendant asserted that it had a lien on the Lease payments that is prior to Plaintiff's claim for non-payment, and it has refused to pay any portion of the Lease payments to Plaintiff. (Complaint, ¶ 30.) Plaintiff is due $498,791.85 on its invoice to PCI. (Complaint, ¶ 31.)

### B.   Procedural History

Plaintiff commenced this action by filing a Complaint in the United States District Court for the Western District of New York. Defendant filed its Motion to Dismiss on April 17, 2006. The parties completed briefing as of August 1, 2006, at which time this Court took the motion under advisement without oral argument.

### III. DISCUSSION

Plaintiff asserts three causes of action: equitable subordination,[3] quantum meruit[4]

---

[3] Equitable subordination is a judge-made doctrine that predates Congress's revision of the Bankruptcy Code. United States v. Noland, 517 U.S. 535, 538, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996). "The fundamental aim of equitable subordination is to undo or offset any inequality in the claim position of a creditor that will produce injustice or unfairness to other creditors in terms of bankruptcy results." See In re Lockwood, 14 B.R. 374, 380-81 (Bankr.E.D.N.Y.1981). It affects the order in which creditors will be paid. Id. at 381; see also In re AppliedTheory Corp., 345 B.R. 56, 59 (S.D.N.Y. 2006).

[4] "Similar to a claim of unjust enrichment, a cause of action sounding in the equitable remedy of *quantum meruit* is based upon the rule 'that one party should not be allowed to enrich itself at the expense of another.'" Leepson v. Allan Riley Co., Inc., 04 Civ. 3720, 2006 WL 2135806, at *6 (S.D.N.Y. 2006) (quoting Gruppo, Levey & Co. v. Icom Info. & Commc'ns, Inc., No. 01 Civ. 8922, 2003 WL 21511943, at *10 (S.D.N.Y. July 1, 2003) (citation omitted)).

and constructive trust[5]. (Complaint, ¶¶ 32-38, 39-45, 46-48.)  Moreover, it alleges that venue is proper here because "a substantial part of the events and omissions upon which the claim is based occurred in the Western District of New York." (Complaint, ¶ 8.) Finally, Plaintiff argues in opposition to Defendant's motion that this Court has personal jurisdiction over Defendant under N.Y. C.P.L.R. § 302(a)(3)(ii).  Defendant, however, maintains that this Court lacks personal jurisdiction, that venue is improper, and that, alternatively, this case should be transferred to the Northern District of Ohio.

## A.  Personal Jurisdiction

### 1.  Rule 12(b)(2) Standard

On a motion to dismiss pursuant to Rule 12(b)(2), the plaintiff bears the burden of establishing that a court has personal jurisdiction over the defendant.  Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994).  Where a court declines to conduct an evidentiary hearing on such motion, a plaintiff need make only a *prima facie* showing of personal jurisdiction through affidavits and supporting materials. Bank Brussels Lambert v. Fiddler Gonzalez & Rodriquez, 171 F.3d 779, 784 (2d Cir. 1999) (citing Marine Midland Bank v. Miller, 664 F.2d 899, 904 (2d Cir. 1981)).

A plaintiff may meet this burden "by pleading in good faith . . . legally sufficient

---

[5]
> A constructive trust is an equitable remedy, necessarily flexible to accomplish its purpose.... Its purpose is to prevent unjust enrichment, although unjust enrichment does not necessarily implicate the performance of a wrongful act.... What is necessary is that the court identify a party who is holding property 'under such circumstances that in equity and good conscience he ought not to retain it.' Counihan v. Allstate Ins. Co., 194 F.3d 357, 361 (2d Cir.1999) (internal citations omitted).

RWP Consol., L.P. v. Salvatore, 460 F.Supp.2d 351, 358 (D.Conn. 2006).

allegations of jurisdiction, i.e., by making a 'prima facie showing' of jurisdiction." Id. (quoting Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 184 (2d Cir. 1998) (internal citations omitted)). A plaintiff can make such a prima facie showing through affidavits and supporting materials containing sufficient facts which, if credited, would establish personal jurisdiction over the defendant. Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996). In determining whether a plaintiff has made this showing, however, a court is not obligated to draw "argumentative inferences" in plaintiff's favor. Robinson, 21 F.3d at 507 (citing Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992)).

Ultimately, "the plaintiff's prima facie showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." Metro. Life, 84 F.3d at 567. Where the issue of personal jurisdiction is resolved on affidavits, the allegations are construed in the light most favorable to plaintiff, and all doubts are resolved in plaintiff's favor. A.I. Trade Finance, Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993).

### 2.    Personal Jurisdiction Standard

"Personal jurisdiction of a federal court over a non-resident defendant is governed by the law of the state in which the court sits – subject of course, to certain constitutional limits of due process." Robinson, 21 F.3d at 510 (internal citations omitted). To resolve the issue of whether personal jurisdiction over a defendant exists, district courts must apply a two-part analysis. Bank Brussels, 171 F.3d at 784. Specifically, the court must first determine whether there is jurisdiction over the defendant under the relevant forum state's laws. Metro. Life Ins., 84 F.3d at 567. If personal jurisdiction exists under the forum state's

laws, the district court must then determine if the exercise of such jurisdiction complies with federal due process requirements. Id. As such, this Court must first examine if the exercise of jurisdiction over Defendant, who is a citizen of Ohio, is appropriate under New York's long-arm statute. See, e.g., Bensusan Rest. Corp. v. King, 126 F.3d 25, 27 (2d Cir. 1997).

### a.     New York's Long-Arm Statute

"Courts may assert two broad categories of jurisdiction over an individual action: specific jurisdiction, which arises when the defendant's activities in the forum are the subject of the action, and general jurisdiction, which arises out of a defendant's contacts with the forum even though those contacts themselves are unrelated to the action before the court." Langenberg v. Sofair, No. 03 CV 8339, 2006 WL 2628348, at *2 (S.D.N.Y. Sep. 11, 2006) (citing Bank Brussels, 305 F.3d at 127 and Commc'ns Partners Worldwide, Inc. v. Main St. Res., No. 04 Civ. 10003, 2005 WL 1765712, at *2-*3 (S.D.N.Y. July 26, 2005)).

New York law provides for both general and specific jurisdiction. The general jurisdiction of New York courts is codified at N.Y. C.P.L.R. § 301. See Langenberg, 2006 WL 2628348, at *2. Section 302 of the N.Y. C.P.L.R. is New York's long-arm statute, and it sets forth the requirements for the exercise of specific jurisdiction. See id. Here, Plaintiff argues that this Court has personal jurisdiction over Defendant pursuant to the long-arm statute. It does not argue that general jurisdiction exists under N.Y. C.P.L.R. § 301.

New York's long-arm statute authorizes the exercise of personal jurisdiction over non-domiciliaries in certain circumstances. Plaintiffs assert that N.Y. C.P.L.R. § 302(a)(3)(ii) applies in this case. That section provides that

> (a) Acts which are the basis of jurisdiction. As to a cause of

> action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
> . . .
>
> > (3) commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
> >
> > . . .
> >
> > (ii) expects or should reasonably expect that act to have consequences in the state and derives substantial revenue from interstate or international commerce.

See N.Y. C.P.L.R. § 302(a)(3)(ii).

To establish jurisdiction under N.Y. C.P.L.R. § 302(a)(3)(ii), the plaintiff must sufficiently allege that (1) defendant performed a tortious act outside of New York, (2) the cause of action arises from that tortious act, (3) the alleged tortious act caused injury within New York, (4) defendant expected or reasonably should have expected that its action would have consequences in New York, and (5) defendant derives 'substantial revenue' from interstate or international commerce. Ivoclar Vivadent, Inc. v. Ultident, Inc., No. 04-CV-984, 2005 WL 1421805, at *4 (W.D.N.Y. June 15, 2005) (citing N.Y. C.P.L.R. § 302(a)(3)); Traver v. Officine Meccaniche Toshci SPA, 233 F.Supp.2d 404, 412 (N.D.N.Y. 2002).

Plaintiff's assertion of personal jurisdiction under N.Y. C.P.L.R. § 302(a)(3)(ii) fails at the first element. Plaintiff does not allege that Defendant performed a tortious act outside of New York. Each of Plaintiff's causes of action – equitable subordination,

quantum meruit and constructive trust – sound in equity, not tort.  See Noland, 517 U.S. at 538; Leepson, 2006 WL 2135806, at *6; RWP Consol., 460 F.Supp.2d at 358.  Plaintiff's argument that these equitable remedies are intended to cure a "wrong," and therefore it is implicitly alleged in the Complaint that Defendant committed a tort is unpersuasive and unsupported by relevant case law.  Nowhere in Plaintiff's Complaint does it allege that Defendant committed a tortious act, either in New York or in Ohio.[6]  Because application of N.Y. C.P.L.R. § 302(a)(3)(ii) is dependent on the commission of a tortious act outside of New York, Plaintiff has failed to set forth even a prima facie basis for jurisdiction under New York's long arm statute.  See Slapshot Beverage v. S. Packaging Mach., 980 F.Supp. 684, 689 (E.D.N.Y. 1997) (describing commission of a tort as the "threshold requirement" of N.Y. C.P.L.R. § 302(a)(3)).

      **b.**    **Due Process**

Even assuming that personal jurisdiction could be found under New York's long-arm statute, "the Due Process Clause limits the exercise of jurisdiction to persons having certain 'minimum contacts' with the forum state."  Computer Assocs. Int'l, Inc. v. Altai, Inc., 126 F.3d 365, 370 (2d Cir. 1997) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528 (1985) and Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945)).  Consistent with due process, a court may only exercise personal jurisdiction over a defendant whose "'conduct and connection with the forum State are such that he should reasonably anticipate being haled

---

[6]Even in its legal memoranda Plaintiff does not identify a tort committed by Defendant.  It characterizes its own Complaint as "alleging that defendant's action or inaction in regard to its funding of PCI resulted in a foreseeable loss."  (Plaintiff's Opposition, p. 8.)  Nowhere does Plaintiff identify a tort.  Instead, it states that Defendant "acted in Ohio."  (Plaintiff's Opposition, pp. 8, 9.)

into court there.' " Burger King Corp., 471 U.S. at 474 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L. Ed. 2d 490 (1980)). Thus, to justify exercise of personal jurisdiction, there must be a requisite showing of "'some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " Burger King Corp., 471 U.S. at 475 (quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 1239-40, 2 L. Ed. 2d 1283 (1958)).

Defendant is a citizen of Ohio. (Patton Aff., ¶ 2.) It does not have offices in New York, does not have employees in New York, does not conduct business in New York, does not own property in New York, and does not solicit business in New York. (Patton Aff., ¶¶ 3-7; L'Esperance Aff., ¶ 2.) Moreover, none of the activity that forms the nucleus of this case occurred in New York. PCI and Defendant are located in Ohio. (L'Esperance Aff., ¶¶ 2, 3.) The loan made by Defendant to PCI was made in Ohio. (L'Esperance Aff., ¶ 4.) Advacare, the company to whom PCI leased the equipment it bought from Plaintiff is located in New Jersey. (L'Esperance Aff., ¶ 5.) Finally, Defendant perfected its security interests in the Advacare Leases and equipment in Ohio. (L'Esperance Aff., ¶¶ 6, 7.)

It appears that the only connection to New York is that Plaintiff is located here and shipped the equipment at issue from New York. (Lumbar Aff., ¶ 6.) Nothing presented to this Court suggests that Defendant has the necessary contacts with New York such that it should reasonably expect to be haled into court here, particularly since Defendant is not alleged to have had any direct contact with Plaintiff at any time during the course of these events. Consequently, this Court finds that its exercise of personal jurisdiction over Defendant would not comport with Due Process.

For the foregoing reasons, this Court finds that Plaintiff has failed to make a prima facie showing that this Court has personal jurisdiction over Defendant. Consequently, Plaintiff's Complaint will be dismissed pursuant to Rule 12(b)(2) for lack of personal jurisdiction.

**B.     Transfer**

Transfer of an action to another federal district is available under two statutory provisions. First, 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Transfer is also available pursuant to 28 U.S.C. § 1406(a), which provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

The decision whether to transfer or dismiss a case pursuant to § 1404(a) or § 1406(a) lies within the sound discretion of the district judge. See Van Dusen v. Barrack, 376 U.S. 612, 622 (1964) (§ 1404(a)); Minnette v. Time Warner, 997 F.2d 1023, 1026 (2d Cir.1993) (§ 1406(a)). A district court may transfer a case on a motion by either party or *sua sponte*. See Lead Indus. Ass'n, Inc. v. Occupational Safety and Health Admin., 610 F.2d 70, 79 n. 17 (2d Cir.1979) ("[t]he broad language of 28 U.S.C. § 1404(a) would seem to permit a court to order transfer sua sponte"); Concession Consultants, Inc. v. Mirisch, 355 F.2d 369, 371-72 n. 3 (2d Cir.1966) ("where the motion asks only that the suit be dismissed, the court may properly, sua sponte, order it transferred [pursuant to 28 U.S.C. § 1406(a)]").

A court may transfer an action to another venue even if it lacks personal jurisdiction

11

over the defendants. See Goldlawr, Inc. v. Heiman, 369 U.S. 463, 465, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962) ("Nothing in th[e] language [of section 1406] indicates that the operation of the section was intended to be limited to actions in which the transferring court has personal jurisdiction over the defendants."); SongByrd, Inc. v. Estate of Grossman, 206 F.3d 172 (2d Cir.2000) (finding that lack of personal jurisdiction can be cured by transfer to a district in which personal jurisdiction can be exercised under section 1404(a)); Corke v. Sameiet M.S. Song of Norway, 572 F.2d 77, 80 (2d Cir.1978) (holding that court had the power to transfer the case although it lacked personal jurisdiction over all of the defendants and finding such transfer to be in the interest of justice, in part because, "transfer would apparently enable appellant to obtain personal jurisdiction over some or all of the defendants").

As is apparent from the foregoing discussion, all events material to this action took place in Ohio and this case could have been brought in the United States District Court for the Northern District of Ohio. Therefore, in the interests of justice, this Court will transfer this case there. See Digital Lab Solutions, LLC v. Stickler, No. 06 Civ. 6482, 2007 WL 700821, at *5 (S.D.N.Y. Mar. 7, 2007) (transferring case in the interests of justice after finding no personal jurisdiction).

## IV. CONCLUSION

For the foregoing reasons, this Court finds that Plaintiff's Complaint must be dismissed for lack of personal jurisdiction. However, this Court will transfer this case to the Northern District of Ohio in the interests of justice pursuant to 28 U.S.C. §§ 1404(a) and 1406(a).

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion to Dismiss (Docket No. 6) is GRANTED for lack of personal jurisdiction.

FURTHER, that this case shall be transferred to the United States District Court for the Northern District of Ohio pursuant to 28 U.S.C. §§ 1404(a) and 1406(a).

FURTHER, that the Clerk of the Court shall transfer this action to the Northern District of Ohio and then close this case.

SO ORDERED.


Dated:      March 21, 2007
            Buffalo, New York


                                                      s/William M. Skretny
                                                      WILLIAM M. SKRETNY
                                                      United States District Judge